IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE of ANNIE EARLE, deceased,

          Plaintiff,

v.                                      CIVIL ACTION NO. 3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF
HUNTINGTON POLICE DEPARTMENT,
a municipal corporation;
JOSH NIELD individually and in his official capacity;
ST. MARY'S MEDICAL CENTER, INC., d/b/a
ST. MARY'S MEDICAL CENTER,
CABELL COUNTY 911;
CABELL COUNTY COMMISSION;
TED GRANT, individually and in his official capacity;
PATRICK WATKINS, individually and in his official capacity,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant St. Mary's Medical Center's ("SMMC") Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Subject Matter Jurisdiction (ECF No. 13), Defendant St. Mary's Medical Center's Motion to Dismiss Wrongful Death Claim (ECF No. 15), Defendant St. Mary's Medical Center's Motion to Dismiss for Failure to Comply With the West Virginia Medical Professional Liability Act Pre-Suit Requirements (ECF No. 17), Defendant St. Mary's Medical Center's Renewed Motion to Dismiss (ECF No. 79), and Defendants' Cabell County 911, Cabell County Commission, Ted Grant and

Patrick Watkins Partial Motion to Dismiss (ECF No. 94).

## I. Statement of Facts

As stated in Plaintiff's Amended Complaint (ECF No. 66), decedent Annie Earle ("Ms. Earle") presented at SMMC Emergency Room on January 10, 2014 for a facial laceration, sustained at the home of her daughter Angela Earle. While being treated for her injury, the staff at SMMC began a mental hygiene assessment, and filed a mental hygiene petition to detain Annie Earle. While the mental hygiene order was pending, Annie Earle left the hospital. SMMC staff then contacted law enforcement to advise them of Ms. Earle's departure. When law enforcement subsequently brought Ms. Earle to the SMMC emergency department, SMMC staff advised law enforcement that the previously filed mental hygiene petition had been denied and that Ms. Earle could be discharged. Thereafter, a physical and verbal altercation arose between Ms. Earle and Officer Neild, during which Ms. Earle sustained fractured ribs, which punctured her heart and caused her death.

On December 12, 2014 Plaintiff, on behalf of Ms. Earle's estate, filed an initial complaint against the City of Huntington, the City of Huntington Police Department, and Josh Nield. Plaintiff then filed two amended complaints in which she also named SMMC, Cabell County 911, Cabell County Commission, Ted Grant, and Patrick Watkins as Defendants. SMMC, Cabell County 911, Cabell County Commission, Ted Grant, and Patrick Watkins have each filed motions to dismiss.

## II. Standard of Review

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must be plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists
when a claim contains "factual content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the
allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations
omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of
entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum
expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks
and citations omitted). Finally, "[a]lthough for the purposes of a motion to dismiss we must take
all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal
conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.   Discussion

#### A.   Claims against SMMC

The West Virginia Medical Professional Liability Act ("MPLA"), West Virginia Code
§ 55-7B-1, *et seq.*, applies to any claim involving "medical professional liability." W. Va. Code
§ 55-7B-6(a). "Medical professional liability" is defined under the MPLA as "any liability for
damages resulting from the death or injury of a person for any tort or breach of contract based on
health care services rendered, or which should have been rendered, by a health care provider or
health care facility to a patient." W. Va. Code § 55-7B-2(i). "Health care" is defined, for purposes
of the MPLA, as "any act or treatment performed or furnished, or which should have been
performed or furnished, by any health care provider for, to or on behalf of a patient during the
patient's medical care, treatment or confinement." W. Va. Code § 55-7B-2(e). "The failure to plead

a claim as governed by the Medical Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*, does not preclude application of the Act." *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 453 (W. Va. 2007). Rather, "[w]here the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp.2007), the Act applies regardless of how the claims have been pled." *Id.* "While the applicability of the Medical Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*, is based upon the facts of a given case, the determination of whether a particular cause of action is governed by the Act is a legal question to be decided by the trial court." Syl. Pt. 3, *Manor Care Inc. v. Douglas*, 763 S.E.2d 73 (W. Va. 2014).

In this case, SMMC staff evaluated Ms. Earle and determined that she was an appropriate candidate for a mental hygiene petition. When Ms. Earle left SMMC with the mental hygiene petition pending, SMMC staff called 911 "based upon, and consistent with, the clinical assessment of Ms. Earle's mental status, as part and parcel of its good faith efforts to provide appropriate intervention and care for Ms. Earle." ECF No. 18. Their decision to call 911 was "directly premised upon the healthcare providers' assessment and concern that Ms. Earle was mentally ill and that, due to such illness, she presented a risk of harm to herself or others." ECF No. 18. *See* W.Va. Code § 27-5-2(a); W. Va. Code § 27-3-1(b)(5).

Plaintiff argues that the only basis upon which SMMC would have or could have contacted 911 to report Ms. Earle's departure from SMMC was Ms. Earle's pending mental hygiene petition. However, West Virginia Code § 27-3-1(b)(5) expressly authorizes disclosure of patient information of mentally ill persons "[t]o protect against a clear and substantial danger of imminent injury by a patient or client to himself, herself or another[.]" As such, SMMC's authority to call 911 is not solely pursuant to the pendency of a mental hygiene petition. Rather, the determination

of whether SMMC's call to 911 was negligent hinges on SMMC's clinical assessment of Ms. Earle's mental status and its determination of the extent to which her mental status presented a risk of harm to herself or others.

If SMMC staff reasonably concluded that Ms. Earle's departure from SMMC, "alone and on foot," (ECF No. 37), presented a clear and substantial danger of imminent injury by Ms. Earle to herself or to another person, in light of the clinical assessment of Ms. Earle's mental status, that call was appropriate and within standards of care. As such, to the extent that the Plaintiff's claims arise from SMMC's assessment of Ms. Earle's mental health status and the subsequent 911 call, Plaintiff's claims fall within the scope of and are subject to the requirements of the MPLA.

Additionally, to the extent Plaintiff characterizes SMMC's actions as an intentional tort, such alleged conduct is also subject to the requirements of the MPLA. In *Mena v. Gray*, 625 S.E.2d 326, 329 (W. Va. 2005), Plaintiff brought claims of alleged battery and assault against a physician due to conduct that occurred during an examination. Although a previous case had failed to extend the MPLA to intentional torts, *Mena* remedied this inconsistency, noting "[i]n Boggs . . . this Court stated that the Act's protection does not extend to intentional torts; yet the Act itself states that it applies to 'any tort,' thus encompassing intentional torts." *Id.* at 330. The court went further to explain "we recognize that a good faith argument may be made that because the alleged assault and battery occurred in the course of an ostensible medical examination, the Appellant's claim is subject to the presuit requirements at issue." *Id.* As such, the court ultimately dismissed the case concluding that the MPLA applied and that the defendant physician would "most certainly argue that his actions were necessary to a complete diagnosis and investigation of the complaints presented to him by [Plaintiff]." *Id.* at 232.

In contrast, *R.K. v. St. Mary's Medical Center, Inc.*, 735 S.E.2d 715, 717 (W. Va. 2012) found that the MPLA did not apply to a hospital's unauthorized disclosure of confidential medical and psychiatric information to Plaintiff's estranged wife and her divorce lawyer. The court in *R.K.* reached this decision by concluding that such conduct was not related to any acts of medical professional liability, and as such, the MPLA did not apply. *Id.* at 725. Here, Ms. Earle's situation is more similar to *Mena*, largely due to the fact that 911 call resulted from conduct that occurred immediately following, and as a result of, Plaintiff's examination. Furthermore, as in *Mena*, SMMC argued that its actions were necessary to provide the appropriate standard of care to Ms. Earle, by attempting to prevent her from harming herself or others. As such, unlike in *R.K.*, SMMC's alleged conduct was related to acts of medical professional liability. Therefore, to the extent Plaintiff alleges SMMC's alleged conduct constitutes an intentional tort, it is still covered under the MPLA.

Under the MPLA, "no person may file a medical professional liability action against any health care provider without complying with the provisions of this section." W. Va. Code § 55-7B-6(a).[1] Section 55-7B-6(b) further provides that "[a]t least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation." W. Va. Code § 55-7B-6(b). The notice of claim "shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all

---

[1] Courts that have considered the MPLA and specifically W. Va. Code § 55–7B–6(b), have determined it applies to actions brought in federal court as substantive law. *Stanley v. U.S.*, 321 F.Supp.2d 805, 807 (N.D.W.Va. 2004).

health care facilities to whom notices of claim are being sent, together with a screening certificate of merit." *Id.*[2]

Here, Plaintiff filed and served its Amended Complaint on SMMC without first providing a notice of claim and a screening certificate of merit. Therefore, Plaintiff has failed to comply with the notice requirements of W. Va. Code § 55-7B-6 and has denied SMMC the rights afforded to it by the provisions of the MPLA. As such, dismissal is proper for the Plaintiffs' failure to comply with the statutory pre-suit notification requirements. *Stanley v. United States*, 321 F.Supp.2d 805, 806–07 (N.D.W.Va. 2004). Defendant SMMC's Motion to Dismiss is **GRANTED**.[3] However, the Court notes that Plaintiff is still within the two year statute of limitations provided by W. Va. Code § 55-7B-4(a). As such, SMMC is dismissed from this case without prejudice and Plaintiff, if it chooses to do so, may file a medical professional liability action in compliance with the requirements of the MPLA.

## B. Claims against Cabell County 911 and Cabell County Commission

The West Virginia Governmental Tort Claims and Insurance Reform Act ("WVTCIRA"), W. Va. Code § 29-12A-4(c)(2), provides that a political subdivision is generally immune from civil liability except for claims arising from the negligence of a political subdivision's employee

---

[2] "The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence, and shall state with particularity: (1) The experts familiarity with the applicable standard of care in issue; (2) the expert's qualification; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death." W. Va. Code § 55-7B-6(b).

[3] Because Defendant SMMC's Motion to Dismiss for Failure to Comply With the West Virginia Medical Professional Liability Act Pre-Suit Requirements (ECF No. 17) has been **GRANTED**, Defendant SMMC's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Subject Matter Jurisdiction (ECF No. 13), Motion to Dismiss Wrongful Death Claim (ECF No. 15), and Renewed Motion to Dismiss (ECF No. 79) are **DENIED AS MOOT**.

occurring within the scope of employment. In the same regards, by only specifying that a political subdivision is liable for an employee's negligent acts, the WVTCIRA excludes liability for a political subdivision based on an employee's intentional acts. W. Va. Code § 29-12A-4(b)(1), (c)(2).

As such, to the extent that plaintiff characterizes the conduct of Mr. Grant and/or Mr. Watkins as "reckless and intentional," Cabell County 911 and Cabell County Commission are immune from claims arising from such alleged conduct. Plaintiff argues in its Response that the conduct alleged in the second Amended Complaint is "willful or wanton," thereby imposing potential liability on the Cabell County Defendants. However, the Cabell County Commission and Cabell County 911 are immune from its employees' intentional acts. Therefore, to the extent Plaintiff asserts a claim for false imprisonment against these political subdivisions, Cabell County 911 and the Cabell County Commission are immune, as these political subdivisions are only liable for the negligent conduct of their employees committed within the scope of employment. W. Va. Code § 29-12A-4(c)(2). As such, Defendants' Motion to Dismiss as to claims against Cabell County 911 and the Cabell County Commission to the extent any such claims are based on the alleged "reckless and intentional" conduct of Ted Grant or Patrick Watkins is **GRANTED**.

### C. Claims against Ted Grant and Patrick Watkins

The WVTCIRA also provides that employees of political subdivisions are immune from personal tort liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code." W. Va. Code § 29-12A-5(b).

The allegations contained in Plaintiff's second Amended Complaint establish that either Ted Grant or Patrick Watkins was working as a 911 dispatcher on the evening of January 11, 2014. ECF No. 66. During that shift, a Huntington police officer radioed Cabell County 911 to inquire as to whether a mental hygiene order was in effect for Ms. Earle. *Id.* Either Ted Grant or Patrick Watkins then advised the officer that a mental hygiene order was in effect for Ms. Earle, even though such petition had been denied. *Id.* Plaintiff characterized this as "reckless and intentional behavior." *Id.*

Although the rules for pleading are liberal, a party must still state sufficient facts to support a claim "that are beyond mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Simply identifying conduct as "willful," "wanton," "intentional," or "reckless," with little factual enhancement or support is insufficient. As Defendants note in their response "the alleged conveyance of erroneous information by Mr. Grant and/or Mr. Watkins does not rise to the level of 'willful and wanton' conduct within the meaning of W.Va. Code § 24-6-8. At best Plaintiff's allegation establish that Mr. Grant and/or Mr. Watkins erred." ECF. No. 100. The Court agrees with this statement.

As such, the described conduct of Ted Grant or Patrick Watkins cannot be classified as anything but allegedly negligent. The WVTCIRA bestows immunity on employees of a political subdivision for allegedly negligent acts committed within their scope of employment. As such, Ted Grant and Patrick Watkins are immune from liability. Therefore, Defendants' Motion to Dismiss as to claims against Ted Grant and Patrick Watkins is **GRANTED**.

## IV.   **Conclusion**

For the foregoing reasons, Defendant St. Mary's Medical Center's Motion to Dismiss for Failure to Comply With the West Virginia Medical Professional Liability Act Pre-Suit

Requirements (ECF No. 17) is **GRANTED**; Defendant St. Mary's Medical Center's ("SMMC")

Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack

of Subject Matter Jurisdiction (ECF No. 13), Defendant St. Mary's Medical Center's Motion to

Dismiss Wrongful Death Claim (ECF No. 15), and Defendant St. Mary's Medical Center's

Renewed Motion to Dismiss (ECF No. 79) are **DENIED AS MOOT**; and Defendants' Cabell

County 911, Cabell County Commission, Ted Grant and Patrick Watkins Partial Motion to Dismiss

(ECF No. 94) is **GRANTED** as to claims against Cabell County 911 and the Cabell County

Commission to the extent any such claims are based on the alleged "reckless and intentional"

conduct of Ted Grant or Patrick Watkins and as to all claims against Ted Grant and Patrick Watkins

individually.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel

of record and any unrepresented parties.

ENTER: September 23, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE