IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE of ANNIE EARLE, deceased,

      Plaintiff,

v.           CIVIL ACTION NO.   3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF
HUNTINGTON POLICE DEPARTMENT,
a municipal corporation, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are multiple Motions to Dismiss or, in the alternative, for Summary Judgment filed by Defendants St. Mary's Medical Center, Inc. ("St. Mary's"), Tammy Peyton, Tara Ramsey, Bobbi Adams, Melissa Blagg, and Andrea Heath (collectively "Nurses") on all claims against them. ECF Nos. 122 (Federal Claims), 119 (Medical Professional Liability Act or "MPLA"), 116 (False Imprisonment Claim), 113 (Wrongful Death Claim). First, St. Mary's and Nurses (collectively "Defendants") move for dismissal of, or summary judgment on, the federal claims alleged against them under U.S.C. §§ 1981, 1983, and 1985, and the Fourth and Fourteenth Amendments to the United States Constitution ("Federal Claims"), and Defendants further request that the Court decline exercising supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(c)(3). ECF No. 122. Second, Defendants move for dismissal of, or summary judgment on, all claims for failure to comply with West Virginia's MPLA. ECF No. 119. Third, Defendants move for dismissal of, or summary judgment on, the state law false imprisonment

claim under Count VII of the Third Amended Complaint. ECF No. 116. Lastly, Defendants move for dismissal of, or summary judgment on, the state law wrongful death claim under Count IX of the Third Amended Complaint. ECF No. 113. For the reasons explained below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss Federal Claims and Decline Supplemental Jurisdiction**.** Additionally, the Court **DENIES** Defendants' Motions for Dismissal and Summary Judgment on Plaintiff's state claims.

## I. BACKGROUND

### A. Facts

According to the Third Amended Complaint, Decedent Annie Earle ("Ms. Earle") arrived at St. Mary's Emergency Room on January 10, 2014 for treatment of a facial laceration sustained at the home of her daughter, Angela Earle. 3d Am. Compl. ¶ 22, ECF No. 111. While treating her injury, the staff at St. Mary's began a mental hygiene assessment and filed a mental hygiene petition[1] to detain Ms. Earle. *Id.* ¶ 23. After Ms. Earle voluntarily left the hospital, St. Mary's staff contacted law enforcement to advise them of Ms. Earle's departure against medical advice, as well as the staff's attempt to obtain a mental hygiene order. *Id.* ¶ 26; Mem. Supp. Defs.' Mot. Dismiss 3, ECF No. 123. When officers brought Ms. Earle back to St. Mary's, the hospital staff advised them that the previously filed mental hygiene petition had been denied and that Ms. Earle could

---

[1] A mental hygiene petition is an informal term for a notarized "Application for Involuntary Custody for Mental Health Examination". *Office of Disciplinary Counsel v. Rogers*, 745 S.E.2d 483, 487 (W. Va. 2013). This application is made pursuant to W. Va. Code § 27-5-2, for instances when a person "has reason to believe that the individual to be examined is . . . mentally ill and . . . likely to cause serious harm to himself, herself or to others if allowed to remain at liberty while awaiting an examination and certification by a physician or psychologist." W. Va. Code Ann. § 27-5-2(a) (West 2016). The detention of the individual named may be approved by a circuit court, mental hygiene commissioner or designated magistrate, until a mental health examination can be performed. W. Va. Code Ann. § 27-5-2(c) (West 2016).

be discharged. 3d Am. Compl. ¶¶ 25–26. Thereafter, a physical and verbal altercation arose between Ms. Earle and Officer Josh Nield, during which Ms. Earle sustained fractured ribs that punctured her heart and caused her death. *Id.* ¶¶ 33–34.

### B. Procedural History

On December 12, 2014, Plaintiff Lumumba Earle ("Plaintiff"), both individually and on behalf of Ms. Earle's estate, filed a complaint against the City of Huntington, the City of Huntington Police Department, and Officer Josh Nield. Compl., ECF No. 1. Plaintiff subsequently filed two Amended Complaints, which further named St. Mary's, Cabell County 911, Cabell County Commission, Police Dispatcher Ted Grant, and Police Dispatcher Patrick Watkins as Defendants. Am. Compl., ECF No. 4; 2d Am. Compl., ECF No. 66. On September 23, 2015, the Court granted St. Mary's Motion to Dismiss for Failure to Comply with the West Virginia MPLA's pre-suit requirements. ECF No. 17. The Court also dismissed claims against Cabell County 911 and the Cabell County Commission that were based on the reckless and intentional conduct of Mr. Grant or Mr. Watkins, as well as all claims against Mr. Grant and Mr. Watkins individually. *Earle v. City of Huntington*, No. 3:14-29536, 2015 WL 5611650 (S.D.W. Va. Sept. 23, 2015), *available at* ECF No. 103. Plaintiff filed a Third Amended Complaint on January 8, 2016, including Nurses as Defendants. 3d Am. Compl. ¶ 10, ECF No. 133.

Now, Defendants move under 12(b)(1) and 12(b)(6) to dismiss all claims against them, and alternatively, they seek summary judgment on these claims. ECF Nos. 122 (Federal Claims), 119 (MPLA), 116 (False Imprisonment Claim), 113 (Wrongful Death Claim). Having introduced the relevant background, the Court will explain the legal standards for 12(b)(1) and 12(b)(6) motions to dismiss in Part II, and discuss Defendants' arguments for dismissal and summary judgment in Part III.

## II.     LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a suit must be dismissed if a federal court does not have the proper subject matter jurisdiction. "Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: 'facial attacks' and 'factual attacks.'" *Zimmeck v. Marshall Univ. Bd. of Governors*, No. 3:13-14743, 2013 WL 5700591, at *2 (quoting *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds*; *Sheridan v. United States*, 487 U.S. 392 (1988)). A facial attack questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Thigpen*, 800 F.2d at 401 n.15. If a facial attack is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id.*

On the other hand, a factual attack challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citation omitted). A dismissal should only be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

When considering a 12(b)(6) motion to dismiss, a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### III. DISCUSSION

First, Defendants ask to dismiss under Rules 12(b)(1) and 12(b)(6) Plaintiff's federal claims against them; they further ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(c)(3). Second, Defendants ask to dismiss under Rule 12(b)(6) all claims for failure to comply with West Virginia's MPLA. Third, Defendants ask to dismiss under Rule 12(b)(6) the state law false imprisonment claim. Lastly, Defendants ask to dismiss under Rule 12(b)(6) the state law wrongful death claim. Alternatively,

Defendants ask for summary judgment under Rule 56(c) on all claims against them. The Court considers each of Defendants' motions and arguments in turn below.

A. *Motion to Dismiss Federal Claims and Decline Exercising Supplemental Jurisdiction Over State Claims*

First, Defendants seek dismissal of Plaintiff's federal claims against them. Defendants also request that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state claims against Defendants. As explained below, the Court grants Defendants' Motion to Dismiss the federal claims, insofar as they apply to Defendants St. Mary's and Nurses, but the Court exercises discretion to retain supplemental jurisdiction over the state claims.

Defendants Motion for Dismissal of the federal claims against them is granted. In the Third Amended Complaint, Plaintiff brings claims under 42 U.S.C. §§1981, 1983, and 1985, as well as the Fourth and Fourteenth Amendments to the U.S. Constitution. These appear to be alleged against all named defendants. *See* 3d Am. Compl. ¶¶ 20, 35–42. However, in the response to the Motion on Federal Claims, Plaintiff describes these federal claims as "moot" and not applying to St. Mary's or Nurses. Mem. Opp. Defs.' Mot. Dismiss 2, ECF No. 137. Therefore, to the extent the Complaint can be read to assert these federal claims against them, the Court dismisses Plaintiff's federal claims against St. Mary's and the Nurses.[2]

In the latter part of their Motion, Defendants argue supplemental jurisdiction over Plaintiff's state claims is lacking and, in the alternative, Defendants ask the Court to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).[3] The Court disagrees. The Court finds

---

[2] These federal claims still apply to other named Defendants.

[3] Defendants never specifically argue that the Court is lacking in subject matter jurisdiction over Plaintiff's claims. However, Defendants' Motion to Dismiss is titled, in part, as one justified by a "lack of jurisdiction" and is raised under Rule 12(b) generally. Def. Mem. Supp. Mot. To Dism. 1, ECF No. 123. Though subject matter jurisdiction is not raised specifically, the Court must assure itself that subject matter jurisdiction exists over all claims, including Plaintiff's state claims.

supplemental jurisdiction exists over Plaintiff's state claims and declining to exercise supplemental jurisdiction over these claims is not warranted.

Federal courts may exercise supplemental jurisdiction over state claims that "form part of the same case or controversy" as a federal claim presented in the same case. 28 U.S.C. § 1367(a) (2012); *Hartman v. Univ. of Maryland at Baltimore*, 595 Fed. App'x 179, 180 (4th Cir. 2014); *Arrington v. City of Raleigh*, 369 Fed. App'x 420, 422 n.1 (4th Cir. 2010). Even after all federal claims supporting supplemental jurisdiction are dismissed, 28 U.S.C. § 1367(c) permits district courts to retain supplemental jurisdiction over remaining pendant state claims. *Arrington*, 369 F. App'x at 422. Section 1367(c) lists circumstances when district courts should decline to retain supplemental jurisdiction over state claims, specifically when: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over federal claims, (3) all federal claims have been dismissed, or (4) other compelling reasons exist for declining jurisdiction. 28 U.S.C. §1367(c) (2012); *Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997); *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). The district court's exercise of discretion under § 1367(c) is not a jurisdictional matter, and therefore, it "may not be raised at any time as a jurisdictional defect." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009). When determining whether to decline exercising supplemental jurisdiction, courts should consider "convenience and fairness to both parties, as well as the interests of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

Here, the Court has original jurisdiction over the federal claims against some named Defendants, and it has supplemental jurisdiction over all related state claims pursuant to 28 U.S.C. § 1367(a). The Parties agree that Plaintiff's federal claims do not apply to St. Mary's and Nurses, and neither Party contends the Court lacks supplemental jurisdiction over Plaintiff's state claims

against St. Mary's and Nurses. Because the federal law and state law controversies between Plaintiff and all named Defendants center on Ms. Earle's death and the preceding events, supplemental jurisdiction exists over the state claims.

Additionally, the Court finds no reason to decline exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Judicial economy is best served by retaining St. Mary's and Nurses as defendants in this case; separate, concurrent state and federal actions would be duplicative. Thus, the Court will exercise supplemental jurisdiction over Plaintiff's state claims.

B. *Motion to Dismiss all claims for failure to comply with the MPLA*

Defendants next argue Plaintiff's state claims should be dismissed because Plaintiff did not adhere to the pre-suit notification requirements of West Virginia's MPLA. The Court disagrees.

The MPLA, set forth at West Virginia Code § 55-7B-1, *et seq.*, applies to the instant case. *Earle*, 2015 WL 5611650. No person may file a medical professional liability action against any health care provider without complying with the MPLA pre-trial notification requirements. W. Va. Code Ann. § 55-7B-6(a) (West 2016). Under these provisions, "[a]t least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation." *Id*. § 55-7B-6(b). The notice of claim "shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care facilities to whom notices of claim are being sent, together with a screening certificate of merit." *Id*. A single certificate is insufficient, as "[a] separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted." *Id.*[4]

---

[4] A screening certificate of merit:
> [S]hall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence, and shall state

-8-

The question raised by the MPLA-based motion to dismiss is whether or not Plaintiff's notice of claim and screening certificate are legally sufficient under the MPLA. To determine legal sufficiency, a reviewing court should evaluate Section 55-7B-6 in light of its statutory purpose. Syl. Pt. 6, *Hinchman v. Gillette*, 618 S.E.2d 387, (W. Va. 2005). The statutory purpose of the MPLA's pre-suit requirements is to prevent frivolous medical malpractice lawsuits and promote pre-suit resolution of non-frivolous medical malpractice claims, *id,* but not to restrict or deny citizens' access to the courts. Syl. Pt. 2, *id.* Therefore, a principal consideration in determining sufficiency should be whether a party has demonstrated a "good faith and reasonable effort" to further the statutory purposes. Syl. Pt. 6, *id*. When reviewing for a good faith effort, courts do not equate individual deficiencies in the certificate of merit with failure to comply with the MPLA. Rather, courts should look for an attempt by the plaintiff to comply with the MPLA. Rectifiable deficiencies are generally insufficient to warrant dismissal unless the plaintiff has willfully ignored them and made no effort to correct. *See Westmoreland v. Vaidya*, 664 S.E.2d 90, 97 (W. Va. 2008) (holding a reasonable belief of compliance was satisfactory and plaintiff should be afforded an opportunity to correct deficiencies where plaintiff thought he was statutorily exempt from filing a certificate); *Gray v. Mena*, 625 S.E.2d 326, 333 (W. Va. 2005) (explaining dismissal is not favored where adjustments can be readily made to permit adjudication on the merits).

In the instant case, Plaintiff provided each named Defendant a copy of the same notice of claim and screening certificate of merit. Defendants draw attention to the MPLA's requirement

---

with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualification; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death.

W. Va. Code Ann. § 55-7B-6(b) (West 2016).

that separate certificates be delivered to every potential defendant, and that each certificate must state, with particularity, any potential defendant's breach and how it resulted in injury or death. Mem. Supp. Defs.' Mot. Dismiss 6–7, ECF No. 120. Defendants contend that providing multiple copies of a single certificate is insufficient to comply with the MPLA. *Id.* However, nowhere in Section 55–7B–6(b) does the word "individual" appear, nor does the MPLA state that certificates need to be tailored to each recipient. *See* W. Va. Code Ann. § 55-7B-6(b) (West 2016). So long as every potential defendant receives a certificate that details each defendant's breach and resulting injury, the certificate complies with the MPLA. *See id*; Syl. Pt. 6, *Hinchman*, 618 S.E.2d 387. The certificate Plaintiff provided explicitly names each of the Defendants, with the exception of Nurse Peyton,[5] and details what action constituted a breach that lead to the injury or death of Ms. Earle.

Defendants further argue dismissal is justified because Plaintiff previously failed to comply with the MPLA. In support of this argument, Defendants point to *Cline v. Kresa-Reahl*, 728 S.E.2d 87 (W. Va. 2012), where the West Virginia Supreme Court of Appeals expressly warned against non-compliance with the MPLA. However, *Cline* is inapplicable to this case. The plaintiff in *Cline* altogether failed to file a certificate before trial. *Cline,* 728 S.E.2d at 91. In this case, Plaintiff corrected the complete lack of notice or certificate, but Defendants argue this correction is still insufficient. The court in *Cline* also disallowed amending pre-suit notice, reasoning "there would seem to be no sense or utility in allowing amendment of a pre-suit notice and certificate *after* suit is filed since its purpose is to avert frivolous claims and promote pre-suit resolution." *Id.* at 98 (internal quotation and citation omitted). In the instant case, Plaintiff made a good faith effort to

---

[5]While the certificate neglects to name Nurse Peyton specifically, a certificate was delivered to each of the Nurses, including Nurse Peyton, and the certificate does specify how the actions of the Nurses, generally and specifically, breached the standard of care and caused the death of Ms. Earle. While the certificate could have benefitted from more clarity, the Court finds these deficiencies do not warrant dismissal of Plaintiff's claims.

comply with the statutory requirements of the MPLA and the alleged deficiencies in Plaintiff's certificate are inconsequential. For these reasons, the Court finds Plaintiff's notice and certificate sufficient to satisfy the MPLA's requirements.[6]

Lastly, Defendants move for summary judgment but fail to offer any justification why such an order would be appropriate; all requests are couched in terms of dismissal. Furthermore, any motion for summary judgment would be premature, as discovery is not complete on this issue. For these reasons, the Court denies without prejudice Defendants' Motion for Summary Judgment based on failure to comply with the MPLA.

C. *Motion to Dismiss False Imprisonment Claim*

Defendants contend that Plaintiff has failed to articulate a viable false imprisonment claim. The Court disagrees.

To bring a false imprisonment claim in West Virginia, a plaintiff must show "(1) the detention of the person, and (2) the unlawfulness of the detention and restraint." *Riffe v. Armstrong*, 477 S.E.2d 535, 552 (W. Va. 1996), *modified of other grounds by Moats v. Preston Cty. Comm'n*, 521 S.E.2d 180 (W. Va. 1999). Regarding mental hygiene orders, "[t]he circuit court, mental hygiene commissioner or designated magistrate may enter an order for the individual named in the application to be detained and taken into custody for the purpose of holding a probable cause hearing." W. Va. Code Ann. § 27-5-2 (West 2016). This application process for a mental hygiene order does not provide for involuntary custody while an application is still pending. *Id.* (allowing for detention only after petition has been granted).

Taking the Third Amended Complaint's plausible allegations as true, a reasonable fact-

---

[6] As suit is currently pending, Plaintiff is not required to submit any additions or amendments to the certificate.

finder could find Ms. Earle was unlawfully held at St. Mary's—either prior to her initial departure, upon her return to St. Mary's, or at both times. The Parties agree that Ms. Earle was at the hospital for eighteen hours and was cleared for discharge well before her release at 4:40 PM on the day after her initial admittance to St. Mary's. Mem. Supp. Defs.' Mot. Dismiss 2, ECF No. 117; Mem. Opp. Defs.' Mot. Dismiss 2–4, ECF No. 139. Furthermore, Ms. Earle was detained when she was picked up by law enforcement and returned to St. Mary's. While the lawfulness of such detention is still at issue, Plaintiff clearly alleges an unlawful detainment by Defendants, both prior to Ms. Earle's initial release from St. Mary's, 3d Am. Compl. ¶18, and upon her detainment by law enforcement at Defendants' direction, 3d Am. Compl. ¶¶18, 26, 74, 77, both of which could amount to false imprisonment under West Virginia law. *Riffe*, 477 S.E.2d 535. Finally, it is a question of fact whether Nurses acted negligently or intentionally in their call to Cabell County 911, during which they notified law enforcement of Ms. Earle's departure from St. Mary's. For these reasons, Defendants' Motion to Dismiss the False Imprisonment Claim is denied.

  Defendants also move for summary judgment on the false imprisonment claim. Defendants point to Ms. Earle's medical records as evidence refuting any claim that she was unlawfully detained prior to her initial release. However, this self-maintained record does not contradict evidence that Ms. Earle was unlawfully detained. *See McKelvey v. W. Reg'l Jail*, No. CV 3:13-22206, 2016 WL 1090619, at *12 (S.D.W. Va. Mar. 21, 2016) (holding initials on defendants self-maintained log did not blatantly contradict plaintiff's deposition evidence of abuse). Additionally, further discovery is needed to clarify how Ms. Earle's detention came about, as well as the role of Defendants in her detention. A defendant who summons the police, resulting in unlawful detention of the plaintiff, is only absolved from false imprisonment liability when there is no evidence the defendant directed the police to detain the plaintiff. *See Lusk v. Ira Watson Co.*, 408 S.E.2d 630

(W. Va. 1991) (explaining liability for false imprisonment based on actions of law enforcement is only avoided when there is no evidence that officers acted at the direction of defendant-merchant). Here, several issues of fact remain. For instance, there is an issue of fact as to which of the Nurses knew about the denial of the mental hygiene order before law enforcement was notified of Ms. Earle's departure from the hospital. Another fact-issue is whether or not Defendants were acting negligently or with intent to detain Ms. Earle when they notified law enforcement. Because fact issues remain at this time, Defendants' Motion for Summary Judgment on the false imprisonment claim is denied without prejudice.

   D. *Motion to Dismiss Wrongful Death Claim*

Finally, Defendants contend dismissal of Plaintiff's wrongful death claim is proper under Rule 12(b)(6) because Plaintiff did not allege Defendants were the proximate cause of Ms. Earle's death. Defendants further maintain that even if such allegation was made, Officer Nield's actions were an intervening cause of Ms. Earle's death. In the alternative, Defendants again seek summary judgment. The Court finds these arguments unavailing.

Wrongful death claims in West Virginia arise under W. Va. Code § 55-7-5, which states, in relevant part, "[w]henever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof." W. Va. Code Ann. § 55-7-5 (West 2016). Additionally, "[q]uestions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. Pt. 6, *McAllister v. Weirton Hosp.*, 312 S.E.2d 738 (W. Va. 1983). However, a person may be absolved of liability when there is an

intervening cause, which "must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." *Estate of Postlewait ex rel. Postlewait v. Ohio Valley Med. Ctr.*, 591 S.E.2d 226, 232 (W. Va. 2003) (quoting Syl. pt. 16, *Lester v. Rose,* 130 S.E.2d 80 (W. Va. 1963)).

In the instant case, Plaintiff has alleged negligence leading to wrongful death. 3d Am. Compl. ¶¶ 1, 87–90. The Third Amended Complaint alleges negligence both preceding Ms. Earle's return to the hospital, as well as during the altercation that caused her death. *See id.* Furthermore, a determination of intervening cause at this juncture would assume the negligence and independent action of Officer Nield, a question of fact yet to be determined. Granting a motion for dismissal or summary judgment on these grounds would require, at this time, a circuitous logic the Court will not engage in. Given the complexity of the events surrounding Ms. Earle's death and the competing issues of fact, a reasonable fact-finder, construing the facts in a light most favorable to Plaintiff, could find in favor of Plaintiff. Thus, the Court finds a claim of wrongful death has been sufficiently alleged and denies Defendants' Motion for Dismissal of Plaintiff's Wrongful Death Claim.

Because discovery on the issue of wrongful death is not yet complete, Defendants' alternative Motion for Summary Judgment is premature. As such, the Court denies without prejudice Defendants' Motion for Summary Judgment on Plaintiff's wrongful death claim.

### IV. CONCLUSION

For the foregoing reasons, Saint Mary's Medical Center, Tammy Peyton, Tara Ramsey, Bobbi Adams, Melissa Blagg, and Andrea Heath's Motion to Dismiss Federal Claims and Decline Supplemental Jurisdiction, ECF No. 122, is **GRANTED in part**, as to the federal claims alleged against these Defendants, and **DENIED in part** as to the state claims against them. Lastly,

Defendants' Motions to Dismiss and for Summary Judgment on all of Plaintiff's claims for failure to comply with the MPLA, ECF No. 119, Plaintiff's false imprisonment claim, ECF No. 116, and Plaintiff's wrongful death claim, ECF No. 113, are **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel of record and any unrepresented parties.

ENTER: June 9, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE