UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISON

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE of ANNIE EARLE, deceased,

          Plaintiff,

v.                                                  Civil Action: 3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF
HUNTINGTON POLICE DEPARTMENT,
a municipal corporation; JOSH NIELD,
individually and in his official capacity;
ST. MARY'S MEDICAL CENTER, INC., d/b/a
ST. MARY'S MEDICAL CENTER,
TAMMY PEYTON, individually and in her official capacity,
TARA RAMSEY, individually and in her official capacity,
BOBBI ADAMS, individually and in her official capacity,
MELISSA BLAGG, individually and in her official capacity,
ANDREA HEATH, individually and in her official capacity,
CABELL COUNTY 911, CABELL COUNTY COMMISSION,
TED GRANT, individually and in his official capacity,
PATRICK WATKINS, individually and in his official capacity,

          Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT, CITY OF HUNTINGTON'S,
OBJECTIONS TO MAGISTRATE'S ORDER GRANTING PLAINTIFF'S MOTION
TO COMPEL AND REQUEST FOR HEARING**

      Comes now the Plaintiff and responds to Defendant, City Of Huntington's, Objections

To Magistrate's Order Granting Plaintiff's Motion To Compel And Request For Hearing, and

states as follows:

**I.      FACTS**

Joshua Nield is a murderer and rapist. He is a misogynist. All three of his victims are women. Thankfully, he is no longer a police officer after being fired by the Huntington Police Department. Unfortunately, his termination was too late.

On January 11, 2014, Mr. Nield killed Annie Earle. Annie was an elderly, mentally ill, one-hundred-ten pound African American woman. In doing so, he violated numerous policies and procedures of the Huntington Police Department that would have prevented her death. On top of the policy violations dealing with the mentally ill, he also called her a "fucking bitch" and slammed her to the ground during his assault. He drove his knee into her chest so hard he fractured her ribs. The knee in her chest was done with so much force it caused her heart to burst and killed her. After this knee blow, he still choked her with his bare hands and called her a "dumb fucking bitch." See Blagg transcript attached as Exhibit 1. This is sociopathic behavior. This is why plaintiff in this case has sued him.

Almost exactly one year later, Nield pulled over college girls for suspicion of driving under the influence. Instead of performing his law enforcement duties, he used his authority to receive sexual favors in exchange for leniency.[1] Mr. Nield was fired for, among other things, criminal conduct of sexual assault and unlawful restraint; cruel, unlawful treatment of a person; and violation of an individual's civil rights. See termination letter attached as Exhibit 2, filed under seal. Mr. Nield invoked his Fifth Amendment right against self-incrimination at his deposition in regard to this subsequent incident. See transcript attached as Exhibit 3. Therefore, plaintiff is left in the dark about most of his conduct in March of 2015 with the college girls.

---

[1] This is upon information and belief from independent sources as the police department will not release any factual information.

The Huntington Police Department conducted its own investigation into Mr. Nield's actions with the college girls that resulted in his termination. This is the file that plaintiff requests. After its investigation, the contents of which the City of Huntington has listed in its objections, the City made copies of these documents and allegedly turned them over to federal authorities to aid in potential federal prosecution. Plaintiff does not request any documents generated by federal authorities regarding its investigation.

## II.    SUMMARY OF ARGUMENT

It is well settled law in the Southern District of West Virginia that law enforcement personnel and investigation files must be produced in civil rights litigation. To balance privacy concerns of citizens and law enforcement, these files are always produced under a protective order. The City of Huntington states that Nield's sexual assault investigation files are different because they copied them and forwarded them to federal authorities. Plaintiff acknowledges generally that documents can be withheld for actual privileges such as attorney- client communication. In this case, the City's only reason to withhold the documents is that it forwarded the documents to federal authorities. It has not identified an actual privilege nor cited any caselaw in support of its newly created "forward documents to another entity privilege." Because it has not identified an actual privilege to withhold the documents, the City tries an amalgamation of relevancy and privacy rights to justify its document suppression. This is an appeal to an Order granting the third motion to compel plaintiff has been required to file to obtain documents that should have been produced years ago. It is clear that the City never wants these documents to see the light of day because they are further proof of Nield's assault on the civil rights of Huntingtonians and likely more proof of his inability to tell the truth when investigated.

**III.  ARGUMENT**

The City of Huntington's argument for document suppression is without merit or support in the caselaw.  In fact, its response cites the controlling case in the Southern District of West Virginia, which clearly demands the production of these documents.  *Wolfe v. Greene*, Case No.: 2:08-cv-01023 (S.D.W.Va. 2009)(Magistrate Mary Stanley)).  In *Wolfe*, the Court stated:

> The great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery, discussed above. Together, these powerful public policies suggest that the defendants' case for restricted disclosure must be extremely persuasive.

*Id*. at pp. 7 (citing *Wood v. Breier*, 54 F.R.D. 7, (E.D. Wisc. 1972).  Furthermore, "*since 2003* it has been the law of this District (Southern District of West Virginia), in § 1983 cases, that police officers' personnel files and internal affairs files will be disclosed to plaintiffs' counsel, with appropriate protections." *Wolfe* at pp. 8 (italics added.)  In this case, the appropriate protection is a protective order which has already been entered in this case.

*Wolfe* cites *King v. Conde*, for the factors favoring disclosure as: (a) the relevance to the plaintiff's case; (b) the importance to the plaintiff's case; (c) the strength of the plaintiff's case; and (d) (the most important factor), the importance to the public interest.  *Id*., at 194-95.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.  In the case at bar, Mr. Nield and Annie Earle were the only people in the room when he killed her.  He states it was an accident.  Plaintiff's theory of the case is that Mr. Nield was a rogue cop that did whatever he wanted

4

to citizens, especially women citizens that he could intimidate. It was not an accident or mistake that officer Nield violated the Fourth Amendment rights of the college girls he sexually assaulted. It was a deliberate action that he intended to occur. Likewise, it was not an accident that Nield killed Annie Earle while violating her Fourth Amendment rights. It was a deliberate, intentional killing. Unfortunately, Ms. Earle is no longer alive to tell the jury about her killing. One way that plaintiff will prove this act was intentional is by the nurse's statement that Mr. Nield had Ms. Earle on the ground with his hand around her throat calling her a "dumb fuckin bitch." Another way plaintiff will prove that the killing was intentional, is by the 404(b) evidence of the girls' constitutional rights being violated. In the Fourth Circuit, 404(b) evidence can be subsequent to the act at issue. See *United States v. Briley*, 770 F.3d 267 (4th Cir., 2014). Indisputably, the evidence is relevant. Whether it is admissible at trial is for another day and not the decision to be made in producing the documents.

  This case is extremely important to the nation and the Southern District of West Virginia. Law enforcement officers that unjustifiably kill unarmed citizens must be brought to justice. The Huntington Police Department failed to do its job when Joshua Nield killed Annie Earle and did not even suspend him for his behavior. It also did not ask an outside agency to review the death but instead conducted its own "sham" internal investigation. As is seen from the facts, Plaintiff's case is strong and overwhelming.

  The Huntington Police Department has already produced Joshua Nield's internal investigation file for the incident where he killed Annie Earle. The issue is not whether internal affairs files should be produced. The caselaw is clear internal affairs files have to be produced and the Huntington Police Department knows that. It does not get to pick and

5

choose which files it produces. Instead it has thrown up a red herring about the Department of Justice Investigation. However, Plaintiff is not requesting the Department of Justice's investigation at this time. He is requesting the HPD internal affairs file.

Another reason that the internal investigation file has to be produced is to test Mr. Nield's credibility. He has had problems with falsifying documents in the past. He denies calling Annie Earle a "dumb fucking bitch" with his hand around her neck even though a nurse at St. Mary's Hospital witnessed this behavior. It is highly likely that he denied sexually assaulting the women that resulted in his termination.

The *King* factors favoring nondisclosure are (1) threat to the officers safety, (2) invasion of the police officer's privacy, (3) the weakening of law enforcement programs by revealing police tactics or evidence; (4) possible chilling of police internal investigative candor, (5) possible chilling of citizen complaint candor, and, (6) state privacy law. *Wolfe v. Greene*, citing *King* 121 F.R.D. at 191–94.

They are taken in turn:

(1) threat to the officers safety

The City of Huntington has not identified any threat to former officer Nield's safety.

(2) invasion of the police officer's privacy

Plaintiff admits that the requested documents likely detail private sexual acts of former officer Nield. While private sexual encounters may not normally be subject to disclosure, this was not a normal private sexual encounter. As the Chief of Police characterized the behavior in his letter terminating Nield, it was a sexual assault, i.e. rape and violation of civil rights. Nield forfeited any right he had to privacy in the encounter(s) when he committed a felony to cause the sexual contact.

6

Defendant states that "[m]eddling in that investigation may influence the ultimate outcome and cause unnecessary disclosure of private and unrelated information of not only Officer Nield, but of the alleged victims. (Elements 1 & 2)." Defendant, City Of Huntington's, Objections To Magistrate's Order Granting Plaintiff's Motion To Compel And Request For Hearing, pp. 8-9. While this appeal to sympathy for Nield's sexual assault victims is a wise tactical move, the first two elements only focus on the violating officer's behavior.

(3) the weakening of law enforcement programs by revealing police tactics or evidence;

Defendant writes that disclosure "may weaken the internal affairs programs by revealing the manner in which evidence is utilized between these departments (*Element 3*)." *Id*. at pp. 9. Defendant does not specify what departments it means. If it means HPD and the Department of Justice, this argument is without merit. HPD did its own internal investigation and subsequently fired officer Nield. Apparently it later forwarded that investigation to the Department of Justice. This is not a drug investigation with state agents deputized as federal agents. This is an HPD internal investigation. Defendant's list of document's contained in the file does not contain memoranda or other documents between the agencies. The documents contained in the file are the same documents plaintiff's counsel routinely sees in cases against HPD officers.

(4) possible chilling of police internal investigative candor

Defendant does not address this factor other than to make the conclusory statement that "disclosure of the HPD/DOJ investigative file will potentially influence the investigative candor of not only that investigation, but all subsequent investigations

7

(*Element 4*)." *Id*. at pp 9. First, despite this statement's characterization, defendant does not seek a HPD/DOJ investigative file," he seeks the HDP internal affairs file that was copied and sent to the DOJ. Second, regardless of whether they are produced to outside parties or not, every police investigation should be candid, i.e. open and honest, to ensure a transparent government entity that citizens will respect.

    (5) possible chilling of citizen complaint candor

This is the only factor of the ten that potentially weighs in defendant's favor. However, defendant has not provided any analysis regarding this factor other than the conclusory statement that "the disclosure would necessarily bring about additional investigation by Plaintiff's counsel into the involvement of those individual citizens, chilling their candor and deterring the general citizen candor needed for effective internal investigation. (*Element 5*)." *Id*. at pp.9. It is important to note that the City of Huntington continuously refers to the rape victims as "alleged victims" and the "alleged misconduct." If it did not actually occur then this factor is irrelevant. If it did, which is more likely considering Nield was actually fired over the incident, then the possibility exists that the victims would not like their story told. This is always a problem in sexual assault cases. However, the girls did the right thing in the first place and came forward with their story. The protective order should alleviate this concern. Furthermore, undersigned counsel understands that the girls have retained local counsel whom can protect their interests. Also, as the Magistrate Order which is being appealed states, the "possibility of chilling...citizen complainant candor which has already occurred does not outweigh the importance and relevance of this information to Plaintiff's case." See Order, Doc (233) at pp. 4, hereby incorporated into this response.

8

(6) state privacy law

The City has not listed any state privacy law that would be violated.

IV.  **CONCLUSION**

Quite simply, plaintiff has had to "pull teeth" to obtain discovery in this case by filing multiple motions to compel. HPD Detective William's notes have curiously been lost. Plaintiff has been patient and not sought fees or costs. That patience has now ended. *Wolfe* makes it clear that *all* internal investigation files of an officer must be produced since 2003 in the Southern District of West Virginia. "Each citizen 'acts as a private attorney general who 'takes on the mantel of the sovereign,' guarding for all of us the individual liberties enunciated in the Constitution." Wolfe citing *Wood v. Breier*, 54 F.R.D. 7, 10-11 (E.D. Wisc. 1972). The only thing that should be changed from the Magistrate's Order is that plaintiff should be awarded fees and costs for pursing this matter. Joshua Nield has trampled on the Constitutional liberties of numerous citizens of Huntington, West Virginia. Full disclosure of his transgressions is needed to fully prove that he intended to kill Annie Earle by a deliberate act. Justice demands that all of his internal investigation files be produced.

Wherefore, Plaintiff asks this Court to issue an Order for the City of Huntington to produce Nield's entire internal affairs file, fees and costs, and an other relief this Court deems necessary.

                                          LUMUMBA EARLE,
                                          An Individual,

By Counsel:  /s/Richard W. Weston
                       Richard W. Weston (WVSB # 9734)
                       WESTON LAW OFFICE
                       337 Fifth Avenue

                                              Huntington, WV 25701
                                              (304) 522-4100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISON

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE of ANNIE EARLE, deceased,

        Plaintiff,

v.                                                      Civil Action: 3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF
HUNTINGTON POLICE DEPARTMENT,
a municipal corporation; JOSH NIELD,
individually and in his official capacity;
ST. MARY'S MEDICAL CENTER, INC., d/b/a
ST. MARY'S MEDICAL CENTER,
TAMMY PEYTON, individually and in her official capacity,
TARA RAMSEY, individually and in her official capacity,
BOBBI ADAMS, individually and in her official capacity,
MELISSA BLAGG, individually and in her official capacity,
ANDREA HEATH, individually and in her official capacity,
CABELL COUNTY 911, CABELL COUNTY COMMISSION,
TED GRANT, individually and in his official capacity,
PATRICK WATKINS, individually and in his official capacity,

        Defendants.

**CERTIFICATE OF SERVICE**

    I, Richard W. Weston, do hereby certify that on this 14th day of February 2017, I electronically filed the foregoing "**PLAINTIFF'S RESPONSE TO DEFENDANT, CITY OF HUNTINGTON'S, OBJECTIONS TO MAGISTRATE'S ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND REQUEST FOR HEARING**," with the court using the CM/ECF system which will send notification of such filing to the below counsel of record:

11

Steve Nord, Esquire
Offutt Nord Burchett
PO Box 2868
Huntington, WV 25728
sknord@onblaw.com

Robert M. Sellards, Esquire
Alexander Turner, Esquire
J. Lauren H. Savory, Esquire
Nelson Mullins Riley & Scarborough LLP
PO Box 1856
Huntington, WV 25719-1856

Lee Murray Hall
Nathanial A. Kuratomi
Jenkins Fenstermaker, PLLC
PO Box 2688
Huntington, WV 25726


/s/ Richard W. Weston
Richard W. Weston
WESTON LAW OFFICE
West Virginia State Bar No. 9734
337 Fifth Avenue
Huntington, West Virginia 25701
Phone: (304) 522-4100