**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE OF ANNIE EARLE, deceased,

Plaintiff,

v. Civil Action: 3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF
HUNTINGTON POLICE DEPARTMENT,
a municipal corporation, et al;

Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS, ST. MARY'S MEDICAL CENTER INC., D/B/A ST. MARY'S MEDICAL CENTER, TAMMY PEYTON, TARA RAMSEY, BOBBI ADAMS, MELISSA BLAGG AND ANDREA HEATH'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENCE AND WRONGFUL DEATH**

Plaintiff Lumumba Earle, individually, and as the Personal Representative of the Estate of Annie Earle, Deceased, by and through Counsel, Richard W. Weston, and Responds to Defendants, St. Mary's Medical Center, Inc. d/b/a St. Mary's Medical Center, Tammy Peyton, Tara Ramsey, Bobbi Adams, Melissa Blagg, and Andrea Heath's Motion for Partial Summary Judgment on the Issues of Negligence and Wrongful Death.

Plaintiff hereby request this Honorable Court to deny St. Mary's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and respectfully request an Order granting same.

Defendants were negligent and proximately caused Ms. Earle's death on January 11, 2014. Plaintiff agrees that to prove negligence and proximate cause Plaintiff has the burden to prove: 1) The health care provider failed to exercise that degree of care (standard of care), skill and learning

required or expected of a reasonable prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances and 2) such failure was a proximate cause of the injury or death. West Virginia Code §55-7B-3. The record in this action makes it clear that SMMC's employees gave false information to Cabell County Dispatch intentionally, or recklessly and in violation of standards of care causing the (1) unlawful detention of Plaintiff's Decedent resulting in her unlawful arrest, (2) return to the hospital and (3) unlawful and forced isolation in a room al one with an unlawfully arresting officer, resulting in Plaintiff's Decedent's death.

In support of this Response, Plaintiff attach the **Memorandum of Law to Support the request for denial of Defendants' Motion.**

**EXHIBITS**[1]

Exhibits to this Motion are:

**Exhibit A:** SMMC Medical Records;

**Exhibit B:** Cabell County CAD Call Sheet;

**Exhibit C:** Transcription of 911 Audio Records;

**Exhibit D:** West Virginia Hospital Emergency Codes;

**Exhibit E:** St. Mary's Medical Center Security Management Program

**Exhibit F:** Deposition Transcript of Nurse Suzanne Billingsley;

**Exhibit G:** Deposition Transcript of Nurse Bobbi Adams;

**Exhibit H:** Deposition Transcript of Nurse Melissa Blagg;

**Exhibit I:** Deposition Transcript of Dr. Chad Kovala;

[1] Plaintiff is attaching as Exhibits excerpts of the referenced depositions in a bid to conserve judicial resources. However, if the Court wants the attached depositions in their entirety, Plaintiff will be glad to provide them upon request.

**Exhibit J:** SMMC Policy and Procedure Manual – Discharge Against Medical Advice – Medical Center Operation Manual;

**Exhibit K:** Deposition Transcript of Dr. Anna Corbin;

**Exhibit L:** Deposition Transcript of Dr. Gregory Clarke;

**Exhibit M:** SMMC Policy and Procedural Manual – Against Medical Advice – Behavioral Health Policy Manual;

**Exhibit N:** SMMC Policy and Procedural Manual – Elopement – Behavioral Health Policy Manual;

**Exhibit O:** Josh Nield Incident Statement;

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE OF ANNIE EARLE, deceased,

Plaintiff,

v. Civil Action: 3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF HUNTINGTON POLICE DEPARTMENT, a municipal corporation, et al; Judge Robert C. Chambers

Defendants.

---

**BRIEF IN SUPPORT OF PLAINTIFF'S ESPONSE TO DEFENDANTS, ST. MARY'S MEDICAL CENTER INC., D/B/A ST. MARY'S MEDICAL CENTER, TAMMY PEYTON, TARA RAMSEY, BOBBI ADAMS, MELISSA BLAGG AND ANDREA HEATH'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENCE AND WRONGFUL DEATH**

Plaintiff Lumumba Earle, individually, and as the Personal Representative of the Estate of Annie Earle, Deceased, by and through Counsel, Richard W. Weston, and for his Brief in Response to Defendants, St. Mary's Medical Center, Inc. d/b/a St. Mary's Medical Center, Tammy Peyton, Tara Ramsey, Bobbi Adams, Melissa Blagg, and Andrea Heath's Motion to for Partial Summary Judgment on the Issues of Negligence and Wrongful Death claims as follows:

**STATEMENT OF FACTS**

On the issues of negligence and wrongful death, Defendants were negligent and proximately caused Ms. Earle's death on January 11, 2014.

Defendants applied for involuntary custody for mental health examination of Plaintiff's decedent. Nurse Bobbi Adams received a phone call at 4:45 p.m. informing her that the application had been denied *See* Response Exhibit A, at pg. 884. Three minutes later at 4:48 p.m., Bobbi

Adams contacted Nurse Melissa Blagg and informed her of the denial of the application. *Id.* Melissa Blagg contacted Cabell County 911 at 4:54 p.m. and informed dispatch that Annie Earle had left the hospital against medical advice and that the application for involuntary custody for mental health examination was pending. *See* Response Exhibit B; *see also* Response Exhibit C.

Based upon the false information conveyed by SMMC's staff phone call, Ms. Earle was unlawfully arrested and brought back to SMMC. Whether or not Officer Nield's arrest was lawful, as it was based on his good faith reliance on false information, is irrelevant to the facts supporting SMMC's liability for providing false information leading to an unlawful detention.[2] SMMC admits upon Officer Nield and Ms. Earle's arrival at SMMC, Nurse Heath advised Officer Nield that the Mental Hygiene Petition had been denied and Ms. Earle was free to leave. There is a dispute of fact whether Ms. Earle became violent or the extent of violence until she was isolated in a room with Officer Nield. SMMC's alleges: "While Officer Nield and Nurse Heath attempted to de-escalate this situation..." De-escalation is not a lay term. It is a professional term within the purview of medicine, security, and police enforcement. Every hospital and law enforcement association in this country has policies and procedures regarding de-escalation. In the medical field, these policies and procedures are known as "Code Gray." The factual scenario relied upon by SMMC to support de-escalation is contraindicated by State Medical Policies and Procedures. *See* Response Exhibit D; *see also* Response Exhibit E, at pg. 4.

## STANDARD OF REVIEW

[2] The issue is whether a detention is lawful or unlawful. It cannot be both. In this case, there is ample testimony by both Plaintiff Expert Witnesses and both Defendants' ER Physicians that one or more of the nurses' actions, inactions or failure to follow or know hospital policy were violations of standards of care. A Petition for Involuntary Custody and Examination was denied on the basis of insufficient information. A reasonable Juror, in conjunction with expert testimony, could easily find standards of care violations were foreseeable after effects caused or contributed to Ms. Earle's death. While Officer Nield may raise a defense that he acted in good faith reliance on false information, SMMC Staff who provided false information and deviation from acceptable standards of care is not privy to Office Nield's defense.

To obtain summary judgment, the defendants must prove there is no genuine issue as to any material fact and therefore they are entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). The Court should not "weigh" the evidence and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). The Court should draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party, plaintiff William Stanley. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986).

## LAW AND ANALYSIS

Wrongful death claims in West Virginia arise under W. Va. Codes § 55-7-5, which states, in relevant part, "[w]henever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof." *See* W. Va. Code §55-7-5 (West 2016). Additionally, "[q]uestions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. Pt. 6, *McAllister v. Weirton Hosp., 312 S.E.2d 738 (W. Va. 1983).* However, a person may be absolved of liability when there is an intervening cause, which "must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." *Estate of Postlewait ex rel. Postlewait v. Ohio Valley Med. Ctr., 591 S.E. 2d 226, 232 (W. Va. 2003) (quoting Syl. pt. 16, Lester v. Rose, 120 S.E.2d 80 (2. Va. 1963)).*

West Virginia malpractice claims are governed by West Virginia Code §55-7B-3, which sets forth the elements a plaintiff must prove to support a claim under the Article. §55-7B-3(a) states: "1) The health care provider failed to exercise that degree of care, skill, and learning

required or expected of a reasonable prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances and 2) such failure was a proximate cause of the injury or death." *See* W. Va. Code §55-7B-3(a) (West 2016). It is Hornbook Law that there may be more than one proximate cause of an injury. In this case, there is ample evidence that SMMC's violations of standards of care, its acts and omissions, acts of ordinary negligence or intentional and/or reckless conduct was a proximate cause of injuries to Ms. Earle, resulted in death. There is ample evidence for a reasonable Jury to conclude that 911 and/or Officer Nield, were not only the proximate cause of the injury. *Estate of Postlewait, supra.*

**a. <u>SMMC Defendants' actions that precipitated the call to Cabell County 911 were a proximate cause of Ms. Earle's injury and Death.</u>**

Nurse Blagg's call to Cabell County was blatantly negligent and the information given to dispatcher was false. Nurse Blagg advised: "We had a patient that we were, um, trying to get a mental order on, um, and she left, AMA against medical advice." *See* Response Exhibit C. The time of the call was 4:54:03 p.m. *See* Response Exhibit B. According to the hospital record, Bobbi Adams was notified that the Petition had been denied at 4:45 pm, 9 minutes before Nurse Blagg's call to Cabell County 911. The medical record further reflects that at approximately 4:48 p.m. Bobbi Adams told Nurse Blagg the Application was denied. *See* Response Exhibit A, at pg. 884.

After depositions, the issue as to whether or not Bobbi Adams conveyed this information to Nurse Blagg remains unanswered. At the time of the phone call, SMMC had knowledge through its employees and agents that the Application or Petition had been denied. Defendant claims they conveyed honest, accurate information to Cabell County. Affirmatively stating there was a pending Hygiene Order, when in fact a Petition had been denied, is an outright lie. It is understandable how a pending Order could be turned into a granted Order somewhere in the chain

of conversations. But more likely than not, had Nurse Blagg told Cabell County 911 that they had a patient with an Order pending left the ED, but an Order had now been denied; Ms. Earle would be alive today.

Both of Plaintiff's Experts, Emergency Room Physician Dr. Kovala and Nurse Practitioner Suzanne Billingsley, testified the phone call was a violation of standard of care. Nurse Blagg testified that there was no reason to call 911 because Ms. Earle was a voluntary patient, without thoughts of hurting herself or others. Ms. Earle was a voluntary patient in the hospital and was not being treated for psychiatric symptoms as a psychiatric patient and therefore had every right to liberty and to self-determination. Nurse Billingsley testified that:

> "There is a documented disconnect between what those two people said they said or said they heard. Bobbi Adams said she let Melissa Blagg know that the order was denied, Melissa Blagg said she never heard that and proceeded to call the sheriff's department, which of course created an indirect restraint of Mrs. Earle's behavior." *See* Response Exhibit F, at pp. 92-93.

As previously shown, Nurse Adams, informed that the application had been denied at 4:45 p.m. conveyed that information to Nurse Blagg at 4:48 p.m. *See* Response Exhibit G, at pp. 36-37. While discussing the pending mental hygiene petition, Nurse Adams stated that "If it's pending, I don't have an order, so I can't hold, as far as behavioral health, can't hold a person if there's not a detention order." *Id.* at 43-44. Adams also included that if there's no detention order, even if it has been filed and yet to be ruled on, if a patient walked out of the hospital, she would not contact 911. *Id.* at 44.

Nurse Blagg stated that she has no recollection being told that the application for detention had been denied. *See* Response Exhibit H, at pg. 39. Blagg testified had she been told the order

had been denied, she never would have called the police. *Id.* at 45. Contrary to Nurse Adams' testimony, Blagg testified that the intent to get a mental hygiene order is reason enough to call 911 to have a person taken into custody and brought back to the hospital. *Id.* at 76. Further, even once Blagg claims she was informed the application had been denied, which was prior to Earle's return to SMMC, she did not call Cabell County 911 to inform them of the denial. Her reasoning: she felt she "can't reverse the effects of phone calls." *Id.* at 45-46. Blagg easily could have informed Cabell County 911 that the application had been denied and Earle would never have been brought back to SMMC. Nurse Billingsley testified that "Nurses Adams' and Blagg's failure to accurately and completely communicate regarding the status of the petition for a mental hygiene order resulted in Ms. Earle being returned to S.M.M.C.'s E.R. by Officer Nield." *See* Response Exhibit E, at pg. 92.

Defendants choose to interpret Dr. Kovala's testimony that calling 911 was not a violation of standards of care. Dr. Kovala was asked: "Earlier, you were critical of the St. Mary's nurse call to 911, correct? Dr. Kovala answered: "Based on the hospital AMA policy and my experience and practice, patients sign out against medical advice. Multiple patients every day and I've never heard of someone calling 911 to tell them someone left against the medical advice of a hospital." Dr. Kovala further testified "There is no standard to do it." *See* Response Exhibit I, pp. 120-121. Though this testimony may be equivocal, three separate St. Mary's Medical Center Policy and Procedure Manuals help clarify that police authority should not be contacted in the event a voluntary patient leaves the hospital with or without medical advice.

St. Mary's Medical Policy and Procedure Manual – Discharge Against Medical Advice, Medical Center Operation Manual, requires physician notification and Risk Management involvement whenever legal assistance or action is desired or required. *See* Response Exhibit J.

In this case, as no physician was notified or had knowledge of Ms. Earle's leaving the hospital, she did not leave AMA. Dr. Corbin and Dr. Clarke, whose care Annie was under at the time, knew nothing about Ms. Earle's departure until she was brought back that evening. *See* Response Exhibit K, at pp. 38-39; *see also* Response Exhibit L, at pp. 39-41.

St. Mary's Medical Center Policy and Procedural Manual Against Medical Advice, Behavioral Health Policy Manual, requires doctor's assistance and informing her/him of their legal rights. *See* Response Exhibit M. No doctors were informed of Ms. Earle's departure or was any information given to her of her legal rights. St. Mary's Medical Center Policy and Procedural Manual Elopement, Behavioral Health Policy Manual applies to a voluntary patient, such as Ms. Earle. *See* Response Exhibit N. It specifically states: "Never use physical force to bring a voluntary patient back to the medical center after they leave the medical center grounds." In regard to involuntary patients, it indicates to notify sheriff or police. It is quite clear that SMMC's policies and procedures for dealing with a voluntary patient prohibits notifying police authority of their leaving the hospital.

**b. <u>Cabell County 911's actions are a combined proximate cause and not the intervening and superseding cause of Ms. Earle's injury and death.</u>**

West Virginia PJI § 905 deals with proximate cause. West Virginia Pattern Jury Instructions for Civil Cases, *Instructions on the Law in Plain Language*, Justice Menis E. Ketchum, Reporter, 2016 Edition. The Section states, "The proximate cause of an injury is a cause that produces the (injury/damage) in the natural and probable sequence of events, and without which the injury would not have occurred." In this case, there could be four proximate causes of Plaintiff Decedent's injury. The first of which and previously discussed herein was the negligence of SMMC's staff. The second proximate cause could be Dispatch furnishing inaccurate information to Officer Nield just like Nurse Blagg gave false information to Dispatch. The third

proximate cause could be SMMC's staff's failure to comply with standards of care on Ms. Earle's return to the hospital and the fourth proximate cause could be Officer Nield's physical assault on Ms. Earle after protocols were breached. "A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of the injury." "*Nivita v. Atlantic Trucking Company, 129 W. Va. 267 40 S.E. 2d, 324 (1946)* is overruled to the extent it states a contrary rule." Syl. Pt. 2 *Everly v. Columbia Gas of West Va. Inc. 171 W. Va. 534, 301 S.E.2d, 165 (1982).*

In fact, an instruction which states that a defendant's fault must be "the proximate cause of the injury rather than "a" proximate cause of the injury is erroneous. *Tracy v. Cottrell, 206 W. Va. 363 542 S.E.2d 879 (1999).* Defendant would have this Court impose West Virginia PGI § 906 entitled "Intervening Cause" as a matter of law based upon the facts of this case Defendant argues, 1) That both 911's and Officer Nield's acts/omissions were new independent acts/omissions of negligence. 2) That the new independent negligence was a new effective cause of injury and 3) That the new independent acts of negligence operated independently of anything else and caused Ms. Earle's injury. As this Court has said early on, "a person may be absolved of liability when there is an intervening cause, which 'must be a negligent act, or omissions, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.'" *Estate of Postlewait ex rel. Postlewait v. Ohio Valley Med. Ctr., 591 S.E.2d 226, 232 (W. Va. 2003).*[3]

For the sake of brevity Plaintiff readily admits both 911 and Officer Nield committed acts of negligence which were a proximate cause of Ms. Earle's injury and death. In order to avoid

[3] On 6/8/16, this Court rendered a Memorandum Opinion and Order regarding Motions to Dismiss or, in the alternative, for Summary Judgment filed by Defendants where this Court identified this language in *Estate of Postlewait,* identifying it to be the current law at pp. 13-14.

conundrum and confusion of § 906, the Court will be asked in this case to apply West Virginia PGI § 907 to clarify matters for the Jury. Section 907 is entitled "Combined Proximate Cause." It states "If a party commits a negligent act or acts that join together with the negligent acts or acts of another party, and the two combine to cause injury, each negligent party may be found at fault for the resulting injury and the negligence of each party will be regarded as a proximate cause of the injury." Of course, if a Jury found Cabell County, Nield or both a proximate cause, fault would be apportioned per West Virginia Statutes. "Intervening cause is a question of fact for the Jury where the evidence is conflicting or when the facts though undisputed are such that reasonable men may draw different conclusion from them." *Evans v. Farmers, 148 W. Va. 142, 143, 133 (S.E.2d, 710, 711, (1963) syl pt. 2*.

The West Virginia Supreme Court of Appeals has sometimes used the term "sole proximate cause." This term seems to suggest that, in proving liability, the plaintiff must identify one, and only one, tortious act that caused the plaintiff's harm. The West Virginia Supreme Court of Appeals has repeatedly rejected this interpretation. (*See Everly v. Columbia Gas, supra, syl. pt. 2)*. Thus, 'the proximate cause may consist of one or more than one negligent act of causation by one or more of the persons which produces the injury." Stated otherwise, "where separate and distinct negligent acts of two or more persons continue unbroken to the instance of an injury, contributing directly and immediately thereto and constituting the efficient cause thereof, such acts constitute the sole proximate cause of the injury." *Hudnall v. Mate Creek Trucking, 490 S.E. 2d 56 (W. Va. 1997) (syl. pt. 2) (internal quotation marks omitted).*

Based on the facts and documents described herein, reasonable minds could differ in regard to both apportionment of fault and the foreseeability of harm from each party's action. Therefore,

Plaintiff request that this Court deny Defendants' Request to Dismiss with Prejudice Plaintiff's Negligent and Wrongful Death Claims as a matter of law.

**i. <u>West Virginia Law does recognize liability against individuals who provide false information to 911 for the subsequent actions of the police.</u>**

Melissa Blagg and Bobbi Adams did not provide honest information and further withheld crucial information. As the medical record documents, at 16:41 "Plaintiff leaves against medical advice. Encouraged patient to stay." *See* Response Exhibit A, at pg. 788. At 16:42 Starlight was notified that the patient left. At 16:45 a call was received that the Petition was denied. At 16:48 Adams told Blagg the Petition was denied. *Id.* at pg. 884. At 16:54 Blagg told Cabell County Dispatch there was a pending Order. *See* Response Exhibit B; *see also* Response Exhibit C. Between Nurse Blagg and Nurse Adams, one of them should have notified Dispatch the Order had been denied. Had there been reasonable communication between Adams and Blagg at the time of the phone call or shortly thereafter and accurate information been conveyed to Dispatch, the BOLO would not have gone out. Therefore, Nurse Blagg and Nurse Adams did not accurately convey information about Ms. Earle to Cabell County 911, keeping the causal chain unbroken regardless of the subsequent actions of Cabell County 911 and Officer Nield.

**ii. <u>Cabell County 911's admittedly negligent action is not the intervening and superseding cause of Ms. Earle's Death.</u>**

Defendants' statement that Cabell County 911's negligent act was not foreseeable does not make it not foreseeable. Blagg's call was made pursuant to a custom and practice in the SMMC ED that only she knows of. Policies previously referred to dispute that routine calls to the police are made on voluntary AMA patients. Defendant faults Cabell County for providing erroneous information to Officer Nield. But, Nurse Blagg provided erroneous information to Cabell County. Defendant's argument supports Plaintiff's position that misinformation and inaccuracies of events

are quite foreseeable. Therefore, the negligence and causal chain of SMMC Defendants remain in spite of any acts of negligence by Cabell County 911 and Plaintiff request the Court deny Defendants' Motion with prejudice as a matter of law.

**iii. <u>Officer Nield's actions are not the intervening and superseding cause of Ms. Earle's death.</u>**

Defendants' argument that Ms. Earle's death was not foreseeable is a red herring. Death is an event that can be caused by injury. Death is a sequelae that can be caused by injury. The test is not whether death was foreseaable it is whether she could be injured by violence. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syllabus point 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988). It is not whether Ms. Earle would die, its whether she could suffer the harm of a general nature.

When asked this question, Nurse Billingsley stated "Was it foreseeable that she would know that she would die if she took her down to an examining room? No. I mean, it's possible. You want a yes or a no? That's an impossible yes or no." *See* Response Exhibit F, at pg. 195. When prodded further on the issue, Ms. Billingsley stated:

> "It's possible because she, Andrea, left the room, closed the door and allowed a psychiatric patient who was acutely psychotic to interact with an untrained police officer who Ms. Earle was already focused on as some time of – I'm assuming this, threat that she had to deal with because she focused on him and attacked him, so she clearly saw it – it was very foreseeable that this would not end well. Whether it would end in death is a question that nobody has a crystal ball to be able to say

> with a percentage, but I can tell you more likely than not this was not going to have a good outcome." *Id.* at 200.

Immediately upon return to the hospital after being informed that an Order had been denied, as a matter of law, Ms. Earle was no longer in the custody or control of Officer Nield. According to Federal Law, EMTALA, a person in an emergency room department exhibiting psychiatric symptoms, is entitled to treatment. Contrary to the hospital policy, including Code Gray, Ms. Earle was left alone in a room without a team, at the mercy of Officer Nield. *See* Response Exhibit O; *see also* Response Exhibit D; *see also* Response Exhibit E. As Ms. Earle was not in the custody and control of Officer Nield upon return to the hospital, SMMC is not entitled to dismissal of this action.

**iv. <u>Upon her return to SMMC ED Ms. Earle did not remain in Officer Nield's custody and control the entire time.</u>**

Plaintiff agrees with Chief Holbrook's assessment that Officer Nield's custody and control of Ms. Earle would have remained in place from the time he picked her up at O'Reilly's until the call was over. The call was over when Officer Nield was advised at the front desk that the Order had been denied.

Dr. Kovala, Plaintiff's Emergency Room Physician Expert, when asked if he believed that it was foreseeable that there would be an interaction between Officer Nield and Ms. Earle that would result in death, he answered:

> My opinion would be if proper restraint and seclusion procedures were followed and done to the standard and how they are trained in competency training as required by Drug Commission on their annual competency training to restrain a patient, if those are all followed properly, injury and death is a very low chance. *See* Response Exhibit I, at pg. 139.

Dr. Kovala further stated that "If proper procedures were followed to restrain, seclude and deescalate a psychiatric patient were followed, the chance of injury, let alone death, is very low." *Id.* at pg. 141.

## CONCLUSION

The facts substantiated by document, statement and stipulation stated herein, taken in a light most favorable to Plaintiff are as follows:

1. On January 10 and January 11, 2014, Plaintiff was a voluntary patient at St. Mary's Hospital. She requested to leave several times and was denied (admitted by all parties).

2. At approximately 4:40 p.m. Annie Earle left the hospital as she had every right to do (admitted by all parties).

3. The Petition for Involuntary Commitment filed earlier on January 11, 2014 was denied at 4:45 p.m. Nursing staff were made aware. At 4:54 p.m. Nurse Blagg gave misleading and false information regarding Ms. Earle's medical and legal status to Cabell County 911. *See* Response Exhibit A, at pg. 884; *see also* Response Exhibit B; *see also* Response Exhibit C.

4. As a result of miscommunication to Cabell County, Josh Nield caused Ms. Earle's arrest and return to the hospital (admitted).

5. After Nield became aware the Order was denied, the Nursing Staff in violation of the Nursing Standards of Care as attested to by two expert witnesses, Ms. Earle was placed by staff in a room alone with Officer Nield. *See* Response Exhibit O; *see also* Response Exhibit I, at pp. 138-141; *see also* Response Exhibit F, at pp. 200-201.

6. An altercation arose between Nield and Ms. Earle resulting in injury and death to Ms. Earle (admitted).

It is based on these facts that Plaintiff request this Honorable Court to dismiss Defendants' Motions and submit issues of negligence and proximate cause to the Jury. In the alternative, based upon the facts documented and supported herein, Plaintiff requests summary judgment in favor of Plaintiff on the issue of negligence and wrongful death. Further, Plaintiff requests costs and fees for defending a frivolous motion.

By Counsel: /s/Richard W. Weston___________

Richard W. Weston (WVSB # 9734)
WESTON | ROBERTSON
337 Fifth Avenue
Huntington, WV 25701
(304) 522-4100

Dated: June 2, 2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE OF ANNIE EARLE, deceased,

Plaintiff,

v. Civil Action: 3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF
HUNTINGTON POLICE DEPARTMENT,
a municipal corporation, et al;

Defendants.

---

## CERTIFICATE OF SERVICE

I, Richard W. Weston, do hereby certify that on this 2nd day of June, 2017, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS, ST. MARY'S MEDICAL CENTER INC., D/B/A ST. MARY'S MEDICAL CENTER, TAMMY PEYTON, TARA RAMSEY, BOBBI ADAMS, MELISSA BLAGG AND ANDREA HEATH'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENCE AND WRONGFUL DEATH,"** with the court using the CM/ECF system which will send notification of such filing to the below counsel of record:

Steve Nord, Esquire
Offutt Nord Burchett
PO Box 2868
Huntington, WV 25728

Robert M. Sellards, Esquire
Alexander L. Turner, Esquire
J. Lauren H. Savory, Esquire
Nelson Mullins Riley & Scarborough LLP

PO Box 1856
Huntington, WV 25719-1856

Lee Murray Hall
Nathanial A. Kuratomi
Jenkins Fenstermaker, PLLC
PO Box 2688
Huntington, WV 25726

/s/ Richard W. Weston
Richard W. Weston
WESTON | ROBERTSON
West Virginia State Bar No. 9734
337 Fifth Avenue
Huntington, West Virginia 25701
Phone: (304) 522-4100
Facsimile: (304) 250-3000