`                IN THE UNITED STATES DISTRICT COURT FOR
                  THE SOUTHERN DISTRICT OF WEST VIRGINIA

                            HUNTINGTON DIVISION

LUMUMBA EARLE, individually and
as the Personal Representative of the
ESTATE of ANNIE EARLE, deceased,

                       Plaintiff,

v.                                              CIVIL ACTION NO.   3:14-29536

CITY OF HUNTINGTON, d/b/a CITY OF
HUNTINGTON POLICE DEPARTMENT,
a municipal corporation, et al.,

                       Defendants.

### MEMORANDUM OPINION AND ORDER

The Court deferred ruling on Defendant's Motion for Summary Judgment (ECF No. 297) regarding Defendant City of Huntington in its prior Memorandum Opinion and Order. *See Mem. Op. & Order*, ECF No. 345. The Court directed the parties to file additional briefs discussing the claims against Defendant City of Huntington for municipal liability. *See Order*, ECF No. 343. The Court has received Plaintiff's Surreply and Defendant's Response, and the issue is now ripe for review. For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 297) for the claims brought against Defendant City of Huntington.

**I.**     **Discussion**

The Court has thoroughly discussed the relevant facts for this Motion in its previous order and will not repeat the summary here. *See Mem. Op. & Order*, ECF No. 345, at 2-8. Plaintiff brought claims against Defendant City of Huntington (Defendant) for the failure to train and supervise, negligent hiring, deliberate indifference, and for violations of the state constitution.

*See Pl.'s Third Am. Compl.*, ECF No. 111.  Defendant originally moved for summary judgment based on qualified immunity for Defendant Officer Josh Nield.  *See Def.'s Mem. of Law in Supp.*, ECF No. 298, at 16.  However, in the Reply, Defendant challenged Plaintiff's claims under municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  *Def.'s Reply*, ECF No. 320, at 12-16.  Plaintiff argues that the evidence supports claims against Defendant for failure to properly investigate uses of force and failure to train police officers on mental illness, but the Court disagrees.  *See Pl.'s Surreply*, ECF No. 348.  The Supreme Court and the Fourth Circuit have established a test for municipal liability that Plaintiff cannot meet at the summary judgment stage.

In *Monell*, the Supreme Court held that a municipality cannot be held liable for its employees' actions under a traditional *respondeat superior* theory.  *Monell*, 436 U.S. at 693.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.  Municipal policies can be based on regulations and ordinances or the informal "decisions of municipal officials authorized to make and implement municipal policy."  *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986)).  Municipal customs can be based on the "persistent and widespread … practices of [municipal] officials[, which] [a]lthough not authorized by written law, [are] … so permanent and well settled as to constitute a custom or usage with the force of law."  *Monell*, 436 U.S. at 691 (internal quotation marks omitted).  These customs can be attributed to the municipality only "when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body."  *Spell*, 824 F.2d at 1387.  For a plaintiff to successfully prove a

municipal liability claim, the plaintiff must also establish that the policy or custom caused the constitutional violation. *Id.* Causation can be direct when the policy or custom is unconstitutional on its face or can be proven independently through "an affirmative link between policy or custom and violation." *Id.* at 1388 (internal quotation marks omitted).

Municipalities rarely enact policies that read explicitly unconstitutional, so plaintiffs often have to show unconstitutionality through independent evidence. The Fourth Circuit in *Spell* identified the two most basic theories for municipal liability in these situations: first, the deficiency in police training and supervision that led to officers committing constitutional violations; and second, the failure by municipal officials to stop or correct the improper conduct. *Id.* at 1389. In each of these scenarios, the plaintiff must: (1) identify the policy or custom at issue; (2) connect the policy or custom back to the municipality; and (3) show the affirmative link between the policy or custom and violation to prove causation. *Id.* The court in *Spell* further limited successful municipal liability claims under each theory by requiring the plaintiff to meet stringent requirements. As Plaintiff in this case alleges claims against Defendant under both of these theories, the Court will discuss the requirements in turn.

First, Plaintiff alleges liability against Defendant for failing to investigate uses of force by police officers, which resulted in a lack of discipline for abuses and acquiescence to continued misconduct. *Pl.'s Surreply*, ECF No. 348, at 2-4. Plaintiff attached exhibits showing that supervisors routinely do not report to a scene when force is used and, thus, do not interview witnesses who may have been available. *Id.* at 3 (describing previous procedure required by Huntington Police Department and Defendant's failure to follow policy). Defendant argues that even with this evidence, Plaintiff cannot meet the standards set forth in *Spell*. *Def.'s Resp. to Pl.'s Surreply*, ECF No. 349, at 3.

Under *Spell*, Plaintiff's claim falls under the category of "[u]nconstitutional police practices as municipal 'custom or usage' by condonation." *Spell*, 824 F.2d at 1390. Unconstitutional practices by police officers can make a municipality liable under 42 U.S.C. § 1983 if the conduct becomes sufficiently widespread to establish a custom or usage that has the force of state law. *Id.* "Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." *Id.* at 1391. A municipality's failure to correct must rise to the level that a violation would be "almost bound to happen, sooner or later" – not just provide the mere likelihood that a violation could occur eventually. *Id.*

The Court finds that Plaintiff's claim is underdeveloped at this late stage of litigation and cannot meet the standards set forth in *Spell*. The policy cited to in Plaintiff's Surreply details reporting requirements when police officers use force in the field. Originally, the policy required the supervisor to go to the scene where force was used. This policy, however, was updated in 2012 to replicate the policy from the Commission on Accreditation for Law Enforcement Agencies. The new policy does not require a supervisor to report to the scene or interview witnesses, but these "more lax" measures do not correlate with Earle's untimely death in this case. *Pl.'s Surreply*, ECF No. 348, at 3. Plaintiff fails to connect how less stringent reporting requirements made the constitutional violation of excessive force almost bound to happen. Plaintiff attempts to connect the two by describing a culture that permits excessive force violations, but this causal link is too attenuated and lacks corresponding evidence. The documents provided to the Court include reports identifying *any* use of force by the officers, which could have been reasonable under the circumstances, rather than reports of excessive force. These files do not

support a custom or culture of excessive force violations. Further, the fact that supervisors no longer have to report to the scene and interview witnesses is not a "sufficiently close causal link" to the specific constitutional violations presented in this case.

Additionally, the evidence in this case does not compare to the amount of evidence provided in *Spell*, which set the standard for these claims. *Spell*, 824 F.2d at 1392-93 (detailing evidence of seven lay citizens' testimony, eight officers' testimony, state district attorney's testimony, legal adviser's testimony, and internal police records showing that complaints of force were not corrected or punished). The complaint in *Spell* detailed how the defendant officials had "knowledge of repeated allegations of abusive and assaultive behavior" and that these officials "fail[ed] to discipline … police officers … who had been found to have committed abusive and assaultive behavior." *Id.* at 1392. The evidence submitted at trial "substantially tracked these essential allegations." *Id.* In this case, Plaintiff failed to provide any evidence to the Court to establish Defendant's knowledge of the improper custom's persistence or an intent or indifference to correct improper conduct. The records produced detail investigations for use of force but do not identify excessive force incidents. Plaintiff's only evidence of excessive force surrounds the instant case with Officer Nield's actions. Evidence of one incident does not provide proper notice to officials to correct or alter behavior. At this stage in litigation, Plaintiff must produce enough evidence to support a claim to justify sending the issue to the jury. Plaintiff has not done so here. Accordingly, the Court finds that Plaintiff cannot maintain a municipal liability claim against Defendant for the failure to properly investigate the use of force by the Huntington Police Department's officers.

Second, Plaintiff alleges liability against Defendant for failing to properly train its police officers on handling persons with mental illnesses. *Pl.'s Surreply*, ECF No. 348, at 4-5. Plaintiff

points to deposition testimony of Huntington Police Department officers who do not recall receiving training – or at least fail to remember the contents of such training – for encountering persons with mental illness. *See id.* at 5. Defendant argues that the evidence fails to meet the standards set forth in *Spell* for deficient training claims. *See Def.'s Resp. to Pl.'s Surreply*, ECF No. 349, at 14-15.

Under *Spell*, Plaintiff's claim is characterized as "[d]eficient training as culpable municipal policy." *Spell*, 824 F.2d at 1389. Training programs and subsequent supervision of police officers constitutes a matter of policy that can establish municipal liability under *Monell*. *Id.* However, "[o]nly those deficiencies in police training policies that result from policymaker fault of at least the degree of deliberate indifference or reckless disregard for the constitutional rights of persons within police force jurisdiction can give rise to municipal liability; mere negligence on the part of policymakers is not sufficient." *Id.* at 1390. A successful claim for deficient training must demonstrate "a sufficiently close causal link" between the deficiency and the constitutional violation. *Id.* "This requires first that a specific deficiency rather than general laxness or ineffectiveness in training be shown." *Id.* The violation again must be "almost bound to happen, sooner or later" due to the deficiency in training. *Id.*

Although the Court may find Defendant's training on mental illnesses imperfect, Plaintiff has failed to produce enough evidence to defeat a summary judgment motion on the claim. Plaintiff has not submitted evidence to the Court to demonstrate Defendant's deliberate indifference or reckless disregard for the deficient training. At most, the record shows an ineffectiveness in the training provided. *See Pl.'s Surreply*, ECF No. 348, at 5 (detailing how various officers could not remember the substance of mental illness training). This ineffectiveness clearly contributed to Officer Nield's actions regarding Earle, but Plaintiff has not

provided other instances in which police officers failed to react properly when interacting with persons having a mental illness. Plaintiff has not provided witness statements or specific examples to support the allegation that the Huntington Police Department has a policy or custom that violates the rights of persons with mental illness. The only evidence provided again surrounds Officer Nield's actions in the instant case. Without more examples of improper conduct, the Court cannot state that Defendant's ineffective training on mental illness amounts to a policy or custom to hold it liable for an individual officer's constitutional violations. "[P]roof of a single violation will not support the inference that the violation resulted from a municipal 'policy' of deficient training." *Spell*, 824 F.2d at 1391. At the summary judgment stage, the Court requires concrete evidence to support Plaintiff's claim to justify a jury trial on the issue. As the record currently stands, Plaintiff's claims against Defendant City of Huntington are too undeveloped to proceed to a jury. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 297) for claims against Defendant City of Huntington.

## II.   Conclusion

The Court finds that Plaintiff cannot meet the stringent requirements to establish municipal liability under *Monell* or *Spell*. Accordingly, the Court must **GRANT in part** Defendant's Motion for Summary Judgment (ECF No. 297) in favor of Defendant City of Huntington.[1]

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   July 27, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE

---

[1] Claims against Defendant Officer Josh Nield will continue to trial as specified in the Court's previous Order. *See Mem. Op. & Order*, ECF No. 345.